# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

**SHAWNA, N[1]**,

             Plaintiff,

    v.

**ANDREW M. SAUL,** Commissioner of
Social Security,

          Defendant.

Case No. 3:18-cv-00818-SI

**OPINION AND ORDER**

Betsy R. Shepherd, 425 Riverwalk Manor Dr., Dallas, GA, 30132. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204; Leisa A. Wolf, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

       Shawna N. ("Plaintiff") seeks judicial review of the final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying Plaintiff's application for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Social Security Act. For the following reasons, the Commissioner's decision is reversed and remanded.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff filed an application for Disability Insurance Benefits and Supplemental Security Income with a protective filing date of November 6, 2001. Plaintiff alleges disability beginning July 27, 1999. Plaintiff was born on January 30, 1974 and was 25 years old on the alleged disability onset date. She is now 45 years old. Plaintiff alleges disability due to post-traumatic headaches, degenerative disc disease of the cervical spine, fibromyalgia, obesity, cognitive disorder, and depression.

Plaintiff's applications were denied initially and on reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALD"). ALJ Charles Evans held a hearing on July 31, 2003. After the hearing, ALJ Evans issued a decision finding Plaintiff not disabled. Plaintiff sought review of that decision, the Appeals Council granted review, and the case was remanded to the ALJ for further proceedings. ALJ Evans held another hearing on May 18, 2005. On January 20, 2006, ALJ Evans again found Plaintiff not disabled. Plaintiff sought review of that decision. The Appeals Council granted Plaintiff's request for review and remanded the case to ALJ Dan Hyatt for further proceedings.

ALJ Hyatt held a hearing on July 31, 2007. On December 8, 2007, ALJ Hyatt found Plaintiff not disabled. Plaintiff sought review of that decision, but this time the Appeals Council denied Plaintiff's request and so she filed an action in this court. On May 25, 2010, this court issued an order remanding the case to the agency for another hearing. ALJ Hyatt held a hearing on December 14, 2010. In a decision issued on January 14, 2011, ALJ Hyatt found Plaintiff not disabled. After the Appeals Council denied review, Plaintiff filed another action in this court, and on January 23, 2014, this court issued an order remanding the case to the agency for another hearing, ordering that on remand Plaintiff be examined by a board-certified rheumatologist. 6:12-

cv-02067-BR, ECF 25. After a fifth hearing, this time before ALJ Kelly Wilson, at which a

medical expert rheumatologist testified but did not examine Plaintiff, ALJ Wilson issued a

decision on September 27, 2016 finding Plaintiff not disabled. See AR 1142-1187. The Appeals

Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the

commissioner. Plaintiff now seeks judicial review of that decision.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.     Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.     Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.     Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ issued a lengthy and thorough opinion in this case. The ALJ first found that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2004. AR 1145.[2] At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 27, 1999. AR 1145. At step two, the ALJ found that Plaintiff had the following severe impairments: post-traumatic headaches, mild cervical dystrophy, fibromyalgia with methylenetetrahydrofolate reductase (MTHFR) gene, obesity, mild cognitive disorder, and depression. The ALJ found Plaintiff's remaining impairments non "severe," AR 1145. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R.  Part 404 Subpart P, Appendix 1. AR 1146.

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except that she can perform occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs, but no climbing of ladders, ropes, scaffolds. [Plaintiff] needs to avoid even moderate exposure to extreme cold, wetness, and humidity and must avoid all hazards (unprotected heights, dangerous machinery). The claimant can perform simple and detailed tasks, but would have difficulty performing more complex tasks consistently. She can perform low stress work, which I have defined as requiring occasional decision making and occasional

---

[2] The Court uses the page numbers associated with the pages in PDF format of the entire administrative record, rather than the page numbers listed, sometimes by hand and sometimes inconsistently, on the top right-hand corner of each page.

> adaptation to change in an unskilled work setting and requiring no
> high production-paced tasks such as a high volume assembly line.
> [Plaintiff] needs to be able to manage her own work flow during
> the day.

AR 1148. At step four, the ALJ found that Plaintiff had not worked in the past 15 years and

therefore had no past relevant work. AR 1185. At step five, the ALJ found that there are jobs that

exist in significant numbers in the national economy that Plaintiff could perform, including

storage facility rental clerk, pricing marker, advertising material distributor, and delivery marker.

AR 1186.

## DISCUSSION

Plaintiff contends that the ALJ erred by (1) improperly rejecting the opinions of treating

and examining medical sources, (2) improperly rejecting Plaintiff's testimony, and

(3) improperly addressing the lay witness statements.

### A. Medical Opinion Evidence

The ALJ is responsible for resolving conflicts in the medical record, including conflicts

among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes

between the opinions of three types of physicians: treating physicians, examining physicians, and

non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a

treating physician's opinion carries more weight than an examining physician's, and an

examining physician's opinion carries more weight than a reviewing physician's." *Holohan v.

Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by

medically acceptable techniques and is not inconsistent with other substantial evidence in the

record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R.

§ 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another

physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc.*

*Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ errs by rejecting or assigning minimal weight to a medical opinion "while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive

basis" for the ALJ's conclusion. *Garrison¸* 759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an opinion when he or she ignores it).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725). In other words, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (citations omitted); *but see id.* at 600 (opinions of non-treating or nonexamining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

Plaintiff's primary medical impairment is fibromyalgia. Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). People suffering from fibromyalgia experience "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue." *Id.* at 590. Fibromyalgia is a poorly understood disease, and there is no cure. *Id.* "What is unusual about the disease is that those suffering from it have 'muscle strength, sensory functions, and reflexes [that] are normal.'" *Revels v. Berryhill*, 874 F.3d 648, 657 (9th Cir. 2017). Another poorly understood aspect of Fibromyalgia is that "[t]here is an absence of

symptoms that a lay person may ordinarily associate with joint and muscle pain." *Id.* (quoting *Rollins v. Massanari*, 261 F.3d 853, 863 99th Cir. 2001).

The ALJ gave little weight to Plaintiff's treating physician Dr. Goering and examining physician Dr. Harris, and completely ignored the 2007 opinion of examining physician Dr. Ogisu. Dr. Goering was Plaintiff's treating physician from 1999, shortly after her head injury, through 2010. AR 1179. Although no physician other than Dr. Goering has asserted that the clinical evidence supported the degree of pain and decreased functioning reported by Plaintiff, he has the most experience with Plaintiff, has seen her more than any other doctor, and over a continuous and extended period of time. The ALJ gave little weight to Dr. Goering's opinion in large part because, "his exams rarely addressed musculoskeletal functioning" and "rarely addressed how [tender points] or her impairments in general affected her range of motion, ability to walk, strength, or function in other exertional domains." AR 1180. The ALJ found Dr. Goering's opinion to be contradicted by other medical opinion evidence because "on most exams, [Plaintiff] demonstrated normal gait, full strength in all extremities, negative straight leg rise, and fairly good range of motion." AR 1180. As discussed above, due to the unique characteristics of Fibromyalgia, normal muscle strength and range of motion is not inconsistent with the disease. *Revels*, 874 F.3d at 657.

The ALJ also preferred Dr. Winkler's opinion over Dr. Goering's opinion as to Plaintiff's limitations due to Fibromyalgia. Dr. Winkler testified that Fibromyalgia patients, in general, tend to do best at a light exertional level. AR 1731. From reading the transcript of Dr. Winkler's testimony, however, it is clear that Dr. Winkler is testifying about patients with Fibromyalgia generally, and when she was asked specifically about Plaintiff, she consistently said that it was hard to determine Plaintiff's symptoms because Plaintiff suffers from more than just

Fibromyalgia. AR 1732 ("ALJ: So . . . based on your review of the record, would you expect her to have days during the month where she wouldn't be able to work because of her fibromyalgia symptoms? A: Its—its really hard to determine that. . . . [Y]ou can't determine that when you talk about subjective symptoms and it's certainly possible that her psychological issues are pretty significant and, therefore, may be impacting her in terms of her ability to function. Generally with fibromyalgia alone . . . you recommend like the exercise and good nutrition[.]"). Thus, these are not "specific and legitimate" reasons for discounting the medical opinion evidence of Dr. Goering.

The ALJ gave very little weight to the opinion of Dr. Harris in part because the ALJ believed that Dr. Harris's examination notes should have led Dr. Harris to reach a different conclusion as to Plaintiff's ability to reach overhead and in other directions. Dr. Harris noted that Plaintiff had "excellent" shoulder range of motion, although testing the range of motion appeared painful to Plaintiff. Dr. Harris recommended that Plaintiff was unable to perform any overhead reaching and should reach in other directions only occasionally. The ALJ gave no weight to these conclusions because the ALJ believed these limitations to be unsupported by Dr. Harris's clinical findings. The ALJ read the same examination notes as Dr. Harris but reached a different conclusion as to what those examination results meant. But an ALJ may not substitute her own opinion for that of the medical experts. *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999). Additionally, the ALJ noted that Dr. Harris's limitations on Plaintiff's ability to reach overhead and in other directions was "at best unsupported by clinical or objective evidence." AR 1177. This statement, however, ignores the fact that in 2007, Dr. Ogisu recommended the exact same limitations on overhead reaching and reaching in other directions as Dr. Harris. See AR 138.

The ALJ completely ignored Dr. Ogisu's 2007 examination of Plaintiff, in which

Dr. Ogisu concluded that Plaintiff could sit for 20-30 minutes at a time, stand for 20-30 minutes

at a time, and walk for 15 minutes at a time and could never reach overhead, but could

occasionally reach, handle, finger, and push/pull. AR 138. An ALJ cannot ignore the opinion of

an examining physician, which is the functional equivalent of rejecting an opinion without

providing any reasons at all, let alone "specific and legitimate" reasons, as is required. *Garrison*,

759 F.3d at 1013; *see also Smolen*, 80 F.3d at 1286 (noting that an ALJ effectively rejects an

opinion when he or she ignores it). By completely ignoring Dr. Ogisu's 2007 examination of

Plaintiff and accompanying medical opinion, the ALJ failed to provide specific and legitimate

reasons for rejecting it. Additionally, because Dr. Ogisu's 2007 opinion was consistent with the

opinion of Dr. Harris, the ALJ's statement that Dr. Harris's opinion was unsupported by other

evidence is incorrect. The Court finds that the ALJ failed to give specific and legitimate reasons

for giving little weight to the opinions of Dr. Goering and Dr. Harris, and for ignoring the

opinion of Dr. Ogisu.

## B. Plaintiff's Testimony

There is a two-step process for evaluating a claimant's testimony about the severity and

limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

"First, the ALJ must determine whether the claimant has presented objective medical evidence of

an underlying impairment 'which could reasonably be expected to produce the pain or other

symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting

*Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant

need not show that her impairment could reasonably be expected to cause the severity of the

symptom she has alleged; she need only show that it could reasonably have caused some degree

of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with SSR 16-3p. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements,

and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7.

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities either contradict his or her testimony or meet the threshold for transferable work skills. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). For daily activities to discount subjective symptom testimony, the activities do not need to be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A claimant, however, need not be utterly incapacitated to receive disability benefits, and completion of certain routine activities is insufficient to discount subjective symptom testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989))); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations"). Moreover, particularly with certain conditions, cycles of

improvement may be a common occurrence, and it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a plaintiff is capable of working. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce the symptoms alleged. AR 1151. The ALJ also found, however, that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms are not fully consistent with the evidence of record. AR 1151. The ALJ provided several different reasons for giving less weight to Plaintiff's subjective symptom testimony.

First, the ALJ found that Plaintiff's credibility was undermined to an extent by the fact that she provided slightly different details in the story of how she suffered a head injury in 1999. AR 1151. The ALJ points out that Plaintiff told some medical providers that she was hit by a crane hook in the back of her head, others that she was hit in the back of her neck, and yet others that she was hit where her head meets her neck. AR 1151-52. Additionally, Plaintiff told some providers that the accident happened as she was loading pallets off of her ship and told other providers that she was loading pallets on to her ship. AR 1153. To some providers, she included a detail that her hardhat fell off, but she left this detail out to others. AR 1153. The Court does

not examine a Plaintiff's credibility in terms of an individual's character for truthfulness. The Social Security Administration has clarified that "the subjective symptom evaluation is not an examination of an individual's character." SSR 16-3P, *available at* 2016 WL 1119029, *1. Whether Plaintiff was hit in the back of the neck, the back of the head, or where her neck meets her head is irrelevant to determining whether Plaintiff's Fibromyalgia can reasonably be expected to produce the degree of symptoms that Plaintiff claims. The ALJ found these minor inconsistencies "shed significant doubt on the overall accuracy of [Plaintiff's] subjective reports." AR 1173. The ALJ should not focus on inconsistencies unrelated to Plaintiff's symptoms, and should not "delve into a wide-ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017). Therefore, the fact that the details in Plaintiff's account of how her head injury happened varied occasionally does not provide a specific, clear, or convincing reason for rejecting Plaintiff's subjective symptom testimony.

The ALJ also noted repeatedly that, despite claims of weakness and fatigue, Plaintiff tested 5/5 on most strength tests and showed no signs of muscle atrophy or weakness consistent with an individual who is too fatigued to engage in normal activity. AR 1170. Although Plaintiff did report weakness and fatigue, Plaintiff never reported that these symptoms prevented her from ever occasionally engaging in physical activity sufficient to prevent muscle atrophy. To the contrary, Plaintiff reported swimming twice a week for 30 or 45 minutes, as recommended to treat her Fibromyalgia pain. The ALJ also found that Plaintiff's reported level of functioning was inconsistent with her claims. AR 1172. Plaintiff reported that she could manage her finances, cook meals, perform household chores, and work on her schoolwork in 15-minute intervals. AR 1172. Plaintiff always maintained, however, that she could not do all of these activities in

any given day and needed to take frequent rest breaks. She described her pain as "go[ing] to intensities at different times of the day," not as a consistent pain. AR 1719. She testified that "if I go grocery shopping, that puts me down for the rest of the day and the next day." AR 1719. The Ninth Circuit has "repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 955, 1016 (9th Cir. 2014). Here, Plaintiff's "daily" activities—which are not really daily activities because she cannot do more than one or two of them in any given day—were consistent with her statements about the impairments caused by her pain. This was not a legitimate basis on which the ALJ could reject Plaintiff's subjective symptom testimony.

## C. Lay Witness Statements

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the

ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

The ALJ considered the lay witness statements and testimony and gave them little weight. AR 1182. The ALJ gave little weight to Plaintiff's friend, Emilie T., who reported that Plaintiff had memory problems and needed reminders. Ms. T. also stated that she believed Plaintiff had difficulty moving information from short term memory to long term memory, but the ALJ found this testimony inconsistent with the neuropsych testing and found the neuropsych testing to be more reliable. The ALJ noted that Plaintiff's memory problems are not supported by the record, and found Ms. T.'s testimony internally inconsistent, thus providing germane reasons for giving this testimony little weight.

Plaintiff's husband testified in 2005 that Plaintiff had difficulty sleeping, and would leave the house perhaps once per month, but she would spend 60-70% of her time lying on the couch. The ALJ gave this opinion little weight, finding it implausible that Plaintiff could spend so much of her time incapacitated and yet never fail to make a medical appointment, and always present as alert. Plaintiff's husband also testified that Plaintiff lacked retention of news stories, but the ALJ found this statement inconsistent with Plaintiff's high performance on neuropsych

evaluations and lack of other memory problems. In 2007, Plaintiff's husband reported that she had cognitive difficulty and short-term memory problems. The ALJ found that this testimony, from both 2005 and 2007, inconsistent with the record evidence and not consistent with formal testing or her interactions with doctors at appointments. At the 2016 hearing, Plaintiff's husband testified that she suffered from panic attacks, but the ALJ gave less weight to this statement because Plaintiff has never claimed to doctors that she suffers from panic attacks. AR 1185. This is a germane reason for giving less weight to Plaintiff's husband's lay witness testimony.

The ALJ found the testimony of Plaintiff's sister Angela M. somewhat convincing. AR 1183. Plaintiff's sister testified that Plaintiff had diminished energy and was prone to headaches and pain and walked slowly. She also testified, however, that Plaintiff could not tolerate long conversations, a finding that was unsupported elsewhere in the record. The ALJ therefore found Plaintiff's sister's testimony of limited persuasiveness. This was not error.

## REMEDY

Plaintiff has had five hearings before ALJs. This is the third time that her case has been considered by a federal district court. She filed her initial claim for disability in 2001, alleging a disability that began in 1999 when she was 25 years old. Today, Plaintiff is 45. Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is

disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

This Court cannot conclude that there are no outstanding issues left to be resolved in this case. In particular, the Court notes that the ALJ entirely failed to consider the medical opinion of Dr. Ogisu and provided unpersuasive reasoning for discounting Plaintiff's subjective symptom testimony. Even if the ALJ adjusted Plaintiff's RFC to include the limitations on reaching recommended by Dr. Harris and Dr. Ogisu, it is unclear whether there would still be jobs in the national economy that Plaintiff could perform at a light exertional level. Although Plaintiff suffers from Fibromyalgia, she reported that she is working towards a college degree in political science online, swims twice a week for 30 to 45 minutes when she has access to a pool, and is capable of managing finances, grocery shopping, and doing household chores. Plaintiff testified that she hopes to use her degree to become a grant writer. AR 1150. The Court cannot

conclusively say that Plaintiff is disabled under the Social Security Act. Accordingly, the case is remanded for a narrow consideration of the specific errors identified herein. The ALJ should evaluate Plaintiff's doctors' opinions as well as Plaintiff's testimony consistent with the medical community's understanding of Fibromyalgia and the specific difficulties it presents.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 22nd day of July, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge